UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEBASTIAN WILLIAMS,

        Petitioner,                        Case Number: 2:15-CV-13785
                                                 HON. ARTHUR J. TARNOW

v.

SHANE JACKSON,

        Respondent.
_____/

**OPINION AND ORDER GRANTING RESPONDENT'S
MOTION TO DISMISS AND GRANTING CERTIFICATE OF APPEALABILITY**

Petitioner Sebastian Williams has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Williams challenges his convictions for first-degree premeditated murder, armed robbery, and possession of a firearm during the commission of a felony.  Respondent, through the Attorney General's Office, has filed a Motion for Dismissal of Petition for Habeas Corpus on the ground that the petition was not timely filed.  The Court finds that the petition was not timely filed and that Williams is not entitled to equitable tolling of the limitations period.  Respondent's motion is granted.

**I.    Background**

Williams' convictions arise from the killing of Tommie Lee Blanchard at his home in the City of Detroit.  The Michigan Court of Appeals summarized the circumstances leading to Williams' convictions as follows:

> Andre Nelson and Tommie Lee Blanchard were at Blanchard's house in March of 1990, when the door was suddenly kicked in. Five men entered the residence, some of whom wore ski masks. Nelson was ordered to lay on the floor, and his hands were taped behind his back. At some point during the ordeal Nelson lost consciousness. Upon regaining consciousness, Nelson realized that his wallet and pinkie ring were missing. Blanchard was found dead in an upstairs bedroom with a gunshot wound to the head.
>
> At trial Nelson testified that he recognized one of the intruder's voices as belonging to defendant Williams. Additionally, Sammy Woods, who admitted to being "high" on drugs and alcohol on the date in question, testified that he saw defendants Williams and [co-defendant] Marcelis on Blanchard's porch with three other men. Moreover, Woods stated that he saw Marcelis kick the door in. Blanchard's brother, Leroy, who was at the residence following his brother's death, testified that he received a phone call from a person identifying himself as "Kango." The caller informed Leroy that "we'll put on in you too." Leroy recognized the voice as belonging to defendant Williams.

*People v. Williams*, No. 141626 (Mich. Ct. App. Apr. 13, 1995) (ECF No. 11-5, Pg. ID 368-69).

Williams was convicted by a jury in Recorder's Court for the City of Detroit of felony murder, first-degree premeditated murder, armed robbery, and felony firearm. On September 21, 1991, Williams was sentenced to life imprisonment for each of the murder convictions and the armed robbery conviction, and two years imprisonment for the felony-firearm conviction.

Williams filed an appeal of right in the Michigan Court of Appeals, arguing that his convictions for first-degree premeditated and felony murder violated double jeopardy, insufficient evidence was presented to show premeditation and deliberation or to establish Williams' identity as one of the men who entered the victim's home, the trial court erred

in failing to *sua sponte* provide the jury with an identification instruction and improperly instructed the jury on reasonable doubt. The Michigan Court of Appeals vacated Williams' conviction and sentence for felony murder and affirmed the convictions in all other respects. *People v. Williams*, No. 141626 (Mich. Ct. App. Apr. 13, 1995) (ECF No. 11-5). The Michigan Supreme Court denied Williams' application for leave to appeal. *People v. Williams*, 450 Mich. 960 (Mich. Dec. 27, 1995).

On March 12, 2013, Williams filed a motion for relief from judgment in the trial court raising these claims: (i) actual innocence; (ii) ineffective assistance of trial counsel; (iii) prosecutorial misconduct; (iv) due process denied by the cumulative effect of the trial court errors; and (v) ineffective assistance of appellate counsel. The trial court denied the motion. 6/24/14 Opinion (ECF No. 11-8, Pg. ID 732-38). Williams filed a delayed application for leave to appeal in the Michigan Court of Appeals, which denied leave to appeal. *People v. Williams*, No. 325280 (Mich. Ct. App. Feb. 26, 2015) (ECF No. 11-8, Pg. ID 664). The Michigan Supreme Court also denied Williams' application for leave to appeal. *People v. Williams*, 498 Mich. 949 (Mich. Dec. 22, 2015).

Williams filed the pending habeas petition on December 11, 2015. He raises these claims:

    I.     Actual innocence.

    II.    Prosecutorial misconduct.

    III.   Ineffective assistance of trial counsel.

    IV.   Cumulative effects of trial errors.

Respondent has field a motion for dismissal of the petition because it was not filed within the applicable one year limitations period. Williams argues in response to the motion that he is entitled to equitable tolling of the limitations period because he is actually innocent and that the limitations period did not begin to run until he discovered the factual predicate for his actual innocence claim (three affidavits) in 2012.

**II.  Standard**

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to all habeas petitions filed after its effective date, April 24, 1996, and imposes a one-year limitations period for habeas petitions. *See* 28 U.S.C. § 2244(d)(1). Williams' habeas petition was filed after April 24, 1996, and thus, the provisions of the AEDPA, including the limitations period for filing a habeas petition, apply. *See Lindh v. Murphy*, 521 U.S. 320, 337 (1997). The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Absent statutory or equitable tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires.  *See* 28 U.S.C. §§ 2244(d)(1)-(2).  "The limitation period is tolled ... during the pendency of 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim.'"  *Wall v. Kholi*, 562 U.S. 545, 550-551 (2011) (quoting § 2244(d)(2)).

**III.    Discussion**

Respondent argues that the petition is barred by AEDPA's one-year statute of limitations, which governs this case because Petitioner filed his habeas petition after AEDPA was enacted. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)).  A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ... or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(A) & (D).  Williams' conviction became final on March 27, 1996, when the time for filing a certiorari petition expired.  *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (stating that a conviction becomes final when the time for filing a certiorari petition expires).  AEDPA's statute of limitations was enacted on April 24, 1996, approximately one month after Williams' conviction became final.  As a result, he was entitled to a one-year grace period (from April 24, 1996, through April 23, 1997) to file his habeas petition or a motion for post-conviction relief that would toll the limitations period.

*Stokes v. Williams*, 475 F.3d 732, 734 (6th Cir. 2007). Williams did not file a habeas petition or a motion for post-conviction relief during the one-year period. His motion for relief from judgment filed in the trial court on March 12, 2013, did not toll the limitations period because it was filed over fifteen years after the limitations period already expired. Williams argues that his petition is timely for two reasons: (i) the factual predicate for his actual innocence claim did not become known to him until 2012; and (ii) he has made a credible showing of actual innocence.

First, the Court considers the applicability of 28 U.S.C. § 2244(d)(1)(D), which provides that, where applicable, the limitations period shall run from the "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). Petitioner argues that the limitations period should run from October or November 2012, when he received the affidavits of three witnesses (Andre Nelson, Sammy Woods, and Debra Woods) in the mail. The Court evaluates the applicability of § 2244(d)(1)(D) on a claim-by-claim basis. *See Pace v.* DiGuglielmo, 544 U.S. 408, 416 n.6 (2005) (the limitations period is considered claim-by-claim under § 2244(d)(1)(D)).

The petition raises five claims for relief: (i) actual innocence; (ii) prosecutorial misconduct; (iii) ineffective assistance of appellate counsel; (iv) due process violation for cumulative error; and (v) ineffective assistance fo appellate counsel. Only one of these claims, the first, relates to the affidavits. Thus, the actual innocence claim is the only claim for which the discovery of the affidavits could trigger the limitations period.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Because this claim is not recognized by the Supreme Court as a cognizable claim in a non-capital habeas case, the date Petitioner could have discovered the factual predicate of this claim is irrelevant to the timeliness determination under § 2244(d)(1)(D). See Romero v. Buss, No. 3:10-cv-531, 2011 WL 4435261, *5 (N.D. Fl. Aug. 24, 2011) (holding that if a claim is not cognizable on federal habeas review, "it cannot be the basis for calculating when the one-year statute of limitations began to run"). *See also Smith v. McEwan*, No. 12-6213, 2013 WL 2372239, *3 (C.D. Cal. May 27, 2013); Anderson v. Tucker, No. 3:11-cv-210, 2012 WL 4794630, *2, n.3 (N.D. Fla. Aug. 30, 2012); *Wilford v. Cain*, No. 10-2163, 2011 WL 6819035, *1 (E.D. La. Dec. 28, 2011). It is, however, relevant in that it may serve as a gateway that, if successful, would allow consideration of Petitioner's otherwise time-barred claims, as discussed below. *McQuiggin v. Perkins*, ---- U.S. ---- , 133 S. Ct. 1924, 1928 (2013).

Petitioner argues that the limitations period should be equitably tolled because he is actually innocent of the crime. The Supreme Court has held that a showing of actual innocence overcomes AEDPA's statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298,

115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007), *citing Souter*, 395 F.3d at 596. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.*, 547 U.S. at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (*quoting Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538.

Petitioner's actual innocence claim rests upon the affidavits of Andre Nelson, Sammy Woods, and Debra Woods. At trial, Nelson testified that he was at Tommie Lee Blanchard's house in March of 1990, when the front door was suddenly broken down.

8

Five men entered the home, some of whom wore ski masks. Nelson was ordered to lay on the floor, and his hands were taped behind his back. At some point, he was struck on the head and lost consciousness. Nelson did not hear the gunshots that killed Blanchard. Nelson testified that he recognized the voice of the man who ordered him to lie on the floor. He testified that it was the same voice he heard on Blanchard's answering machine a few days earlier. Nelson testified: "I don't forget a voice." 2/4/91 Tr. at 136, ECF No. 11-2, Pg. ID 136.

Nelson's affidavit states that he had never seen Petitioner or Curtis Marcelis before he was called to testify against them, nor did he see them do anything to him or Blanchard. Nelson further states that he only testified against them because he was afraid of Detective Richard Ivy, who had been threatening to jail him for Blanchard's murder. *See* Andre Nelson Affidavit, ECF No. 11-7, Pg. ID 72. Nelson does "not even know for sure if they were the ones who robbed me or had killed Tommie Blanchard." *Id.*

Nelson's affidavit does not represent the type of credible evidence leading to the conclusion that it is more likely than not that no reasonable juror would have voted for conviction had they heard this evidence. Several factors call into question the credibility of Nelson's affidavit. First, Nelson is presently serving a life sentence and has been continuously incarcerated since as early as 1994. Such jailhouse affidavits are regarded with extreme suspicion. *See McCray v. Vasbinder,* 499 F.3d 568, 574 (6th Cir. 2007) (finding that a recanting affidavit from an inmate could reasonably be discounted as an attempt to keep from being "pegged as a rat"); *Carter v Mitchell*, 443 F.3d 517, 539 (6th

Cir. 2006) (finding the affidavits of two inmates recanting their trial testimony "of little value"). Second, Nelson waited over 18 years after Petitioner's convictions to execute an affidavit. This nearly two-decade delay invites "a fair degree of skepticism" as does the absence of a reasonable explanation for the delay. *Herrera,* 506 U.S. at 423.

The affidavit of Sammy Woods, also known as Moe Robinson-El, is similarly unpersuasive. Woods testified at trial that on the night of Blanchard's murder, he was standing near Blanchard's house when he saw five men on Blanchard's front porch. He identified two of the men as Petitioner and co-defendant Curtis Marcelis. Woods testified that he saw one of the men kick in Blanchard's front door. The front porch light then went out and Woods proceeded to walk by the house. Woods' un-notarized affidavit, dated January 26, 1996, primarily concerns co-defendant Marcelis. Woods states that he was mistaken in identifying Marcelis as one of the men on the porch. Affidavit of Sammy Woods a/k/a Moe Robinson-El, 1/26/96, ECF No. 11-7, Pg. ID. 640-41. The only statement in the affidavit potentially relevant to Petitioner is Woods' statement that he consumed a large amount of cocaine which clouded his perceptions. *Id.* at Pg. ID 640. Woods testified at trial that he had consumed cocaine prior to seeing the men on Blanchard's porch, but denied his perceptions were altered by the cocaine. At best, then, Woods' affidavit provides impeachment evidence. A habeas petitioner's attacks on a witness's credibility are insufficient to establish actual innocence excusing a procedural bar. *See Sawyer v. Whitley,* 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *In Re Byrd*, 269 F.3d 561,

10

577 (6th Cir. 2001) ("attacks on trial witness's ... reliability, ...do not provide proof of 'actual innocence'").  Moreover, any impeachment value is significantly reduced by the five-year gap between the trial and execution of the affidavit.  Petitioner is not entitled to tolling on this basis.

Finally, Petitioner submits the affidavit of Debbie Woods, Sammy Woods' sister, who did not testify at trial.  Debbie Woods' affidavit is undated and not notarized.  She states that sometime after the conviction of co-defendant Marcelis, her brother Sammy told her that he had been mistaken in testifying that Marcelis was one of the men on Blanchard's porch.  *See* Affidavit of Debbie Woods, ECF No. 11-7, Pg. ID 642.  She does not mention Petitioner.  Nothing contained in Woods' affidavit is relevant to Petitioner's actual innocence claim.

The affidavits all have significant credibility problems and fall far short of convincing the Court that, when considered in light of all the evidence presented at trial, the affidavits make it "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.  Equitable tolling is not warranted and the petition is untimely.

**IV.   Certificate of Appealability**

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "When the district court denies a habeas petition on

11

procedural grounds without reaching the p[etitioner]'s underlying constitutional claim[s], a [certificate of appealability] should issue when the p[etitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Having undertaken the requisite review, the Court concludes that jurists of reason could find debatable whether the statute of limitations was equitably tolled.

**V.     Conclusion**

For the reasons stated above, Respondent's Motion to Dismiss (ECF No. 10) is GRANTED.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED. Petitioner may proceed *in forma pauperis* on appeal because an appeal may be taken in good faith. 28 U.S.C. § 1915(a)(3).

s/Arthur J. Tarnow<br>
Arthur J. Tarnow<br>
Senior United States District Judge

Dated:  March 6, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 6, 2017, by electronic and/or ordinary mail.

s/Catherine A. Pickles<br>
Judicial Assistant